People of the State of Illinois, Defendant in Error, v. Fred Young, Plaintiff in Error.

Gen. No. 49,495.

First District, Third Division.
October 29, 1964.

Steven F. Ticho, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney, of Chicago, Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for defendant in error.

14

MR. JUSTICE SULLIVAN delivered the opinion of the court.

A writ of error was issued by the Supreme Court to review a judgment of the criminal court of Cook county, entered by the court without a jury, finding the defendant guilty of the crime of burglary and sentencing him to a term of not less than one year nor more than life in the Illinois State Penitentiary. The case is before us having been transferred from the Supreme Court.

The defendant contends (1) that he was not allowed a reasonable time within which to prepare his defense; (2) that the court failed to assign competent counsel, and (3) that the defendant was not advised of his right to demand counsel other than the public defender.

Defendant was arrested on March 5, 1959, indicted for burglary on March 17, 1959, and arraigned on May 25, 1959. On the day of arraignment, the public defender was appointed to represent the defendant, and on May 28, 1959 said public defender filed his appearance.

The cause was set for trial on June 10, 1959. When the case was called, Mr. Puisis of the public defender's office said, "We won't be ready on this, your Honor. We have never had an opportunity to completely investigate this matter." After the State informed the court that they were ready to proceed, the trial judge gave the public defender an undisclosed period of time to confer with his client. At the conclusion of this conference the case proceeded to trial without objection.

The State called two witnesses. The first of these was a Mr. Ernest Stahl, the owner of the tavern which defendant was charged with burglarizing. Mr. Stahl testified that the lock on the door of his establishment

15

was broken. That on the morning of the burglary at approximately 3:00 a. m., while he was in his living quarters in the rear, he heard some noise in the front part of the tavern. That he got dressed, took his gun and went to the front where he found the defendant breaking into the coin box of a bowling machine. That he told the defendant to put his hands up, and when defendant made a break for it, the witness fired a couple of shots at him. That defendant got to the door, turned toward him for a few seconds, then turned back to the door and ran out into the street. That the witness followed him and fired one shot into the air. That he then noticed that the defendant had fallen to the sidewalk so he ran back into the tavern and called the police. On cross-examination, Mr. Stahl testified that there were "roughly about $30 in quarters and dimes in the coin box.

The other State's witness was Police Officer Howard Young. He testified that on the morning of the burglary at approximately 3:15 a. m., he and his partner were responding to a burglary in progress call when they spotted the defendant trying to crawl under his car. That they stopped their squad car, ran over to defendant and when defendant refused to come out from under the car, they reached under and pulled him out. That they searched defendant and found approximately $227 in United States currency and $19 in change on his person. That defendant had been shot, so they placed him in a squadrol and had him taken to St. Anne's Hospital. Officer Young then identified People's Exhibit One, a gun, and People's Group Exhibit Two, a half-inch jimmy bar and two screw drivers, as being the items which they found laying under the car next to where the defendant had crawled. The gun was also identified by Ernest Stahl as being one which was taken from behind the bar on the morning of the burglary.

16

■■■■■■■■■

Defendant testified in his own behalf that on the morning of the burglary he was driving past Ernest Stahl's tavern when he saw two men leaving the place. That he wanted to make a telephone call, so he stopped and entered the tavern. That he saw no one so he pounded on the bowling machine, and as he started toward the bar, Mr. Stahl came out from the rear of the tavern and fired a shot at him. That when defendant hollered, "Stop,"! Mr. Stahl fired again. That defendant ran out of the tavern and Mr. Stahl followed him, and as he was running down the street Mr. Stahl fired again. This shot hit the defendant in the back and he passed out. That, when he regained consciousness, he was standing on the street and he heard a police squad car coming. That he ran out in the street, flagged the squad car down and asked to be taken to the hospital. Defendant denied having any knowledge of the gun, jimmy bar or screw drivers found at the scene of his arrest, and when asked how much money he had on his person at the time of the arrest, he testified, "I had a hundred and fifteen or twenty dollars. I had about $135." He stated that of this amount about three or four dollars was change.

The court found the defendant guilty of the crime of burglary and overruled defense counsel's motions for a new trial and in arrest of judgment, and denied his application for probation. The court then asked for defendant's record before sentencing him and the assistant State's attorney produced reports of four prior convictions. The court then sentenced the defendant to a term of not less than one year nor more than life in the Illinois State Penitentiary.

■■■■ It is the opinion of this court that defendant had adequate time to prepare his defense. As was stated, the public defender was appointed as his counsel on May 25, 1959. The case came to trial on

17

June 10, 1959, thirteen days after the appearance was filed. This was a simple case. The State produced only two witnesses, and the defendant was the only witness to appear for the defense. As was said in People v. Solomon, 24 Ill2d 586, 589, 182 NE2d 736:

> "The granting of a continuance to permit preparation for a case, or for the substitution of counsel, necessarily depends upon the particular facts and circumstances surrounding the request, and is a matter resting within the sound judicial discretion of the trial court. (People v. Surgeon, 15 Ill2d 236; People v. Clark, 9 Ill2d 46.) Before a judgment of conviction will be reversed because of the denial of such a motion, it must appear that the refusal of additional time in some manner embarrassed the accused in preparing his defense and prejudiced his rights. (People v. VanNorman, 364 Ill 28; see also: Holt v. United States, (8th cir) 267 F2d 497; United States ex rel. Thompson v. Nierstheimer, (7th cir) 166 F2d 87; Crono v. United States, (9th cir) 59 F2d 339.)"

There is no showing here that the defendant was in any way embarrassed by not being allowed additional time to prepare his defense. Defendant argues that when his case came up for trial he had not had an opportunity to consult with his counsel. Nothing in the record of this case supports such a contention. True, the public defender said he had not had an opportunity to completely investigate the matter, but after conferring with the defendant, he proceeded to trial without objection. It may well have been that he determined that there was nothing to be gained by any further delay. At any rate, no motion was ever made for a continuance, and the trial court can hardly be accused of abusing its discretion in failing to grant a motion which was never presented to it.

18

Defendant bases his claim that the assistant public defender was incompetent upon (1) his failure to press for a continuance prior to trial; (2) his failure to object to conclusions allegedly stated by the victim, Ernest Stahl, on direct examination; (3) his failure to properly cross-examine the People's witnesses; (4) his failure to properly examine defendant on direct examination, and (5) his failure to make an argument at the close of the case, an argument after the finding of guilty, an argument in support of his posttrial motions, and an argument in mitigation.

As we have already stated, after conferring with the defendant, the assistant public defender may have determined that there was nothing to be gained by any further delay. Not knowing what information passed between the defendant and the assistant public defender, we are in no position to say that his failure to press for a continuance in any way prejudiced the defendant.

Defendant's reference to conclusions stated by the victim, Ernest Stahl, is not supported by specific references to the portions of the testimony complained of, and this court, upon an examination of Mr. Stahl's testimony, is unable to find any testimony which, because of its being in the nature of a conclusion, was so prejudicial to the defendant that the failure to object to it was evidence of the assistant public defender's incompetency.

Whether or not the assistant public defender should have asked other or additional questions of the People's witnesses on cross-examination or of the defendant on direct examination is something which cannot be determined without knowing what the reponses would be to such questions. Not knowing what information the public defender possessed, we are again in no position to say that his failure to ask such

19

questions was in any way prejudicial to the defendant.

██ This was a short trial. The evidence was fresh in the trial judge's mind. The only argument which defendant suggests might have been made at the close of the case is the question "why a man who owns his own car and has $237 in his pocket, should break into juke boxes." (The evidence of Police Officer Young shows that he had found approximately $227 on defendant's person.) Such an argument could certainly not be deemed to be so persuasive that the failure to make it was evidence of incompetency on the part of the assistant public defender. The only reference to defendant owning an automobile was made by the arresting officer when he testified, "When we got to Grand and Austin, we seen this defendant, Fred Young, Jr., trying to crawl under *his* car, which was a '51 green Buick." (Emphasis ours.) Assuming that the police officer had personal knowledge of the defendant's ownership of the car, such ownership of an eight-year-old car could certainly not be considered as evidence of such opulence as to show that defendant would not stoop to breaking into coin boxes. The same thing can be said for the $227 in defendant's pocket, especially since we do not know how the defendant acquired it. As to defense counsel's failure to make an argument after the finding of guilty, an argument in support of his post-trial motions, and an argument in mitigation, defendant fails to set forth what arguments would have been to his avail, and we can conceive of none.

██ For a finding of incompetence, the record must clearly establish incompetence and also that the defendant was substantially prejudiced thereby. (People v. Robinson, 21 Ill2d 30, 36, 171 NE2d 11; People v. Coolidge, 26 Ill2d 533, 540, 187 NE2d 694.) We do

20

not find that these requirements have been met in this case.

■ The defendant was called to testify. The direct examination of the defendant by his counsel clearly brought out the defendant's version of the occurrence. The assistant public defender moved for a finding of not guilty at the close of the People's case and at the conclusion of the evidence. He also made post-trial motions on the defendant's behalf and sought probation from the court. He exhibited familiarity with the defense as well as with the laws of evidence and trial practice. The defendant was competently represented.

■ ■ Regarding defendant's last point, that he was not advised of his right to demand counsel other than the public defender, section 4 of the act relating to public defenders provides that the court "may with the consent of the defendant, appoint counsel, other than the public defender, and shall so appoint if the defendant shall so demand." (Ill Rev Stats 1957, c 34, § 163f.) Nothing in this section or elsewhere requires that the defendant be informed of such right to demand counsel other than the public defender, and, since no such demand was made, no error could possibly have resulted, in this case, from the court's appointment of the public defender in the absence of objection by the defendant. (People v. Sinko, 21 Ill2d 23, 26, 171 NE2d 9.)

The judgment of the criminal court of Cook County is affirmed.

Affirmed.

SCHWARTZ, P. J. and DEMPSEY, J., concur.